J-S22016-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| TAMMYSUE HERSEY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HARLIE SHAE WETZEL AND BROOKS | : | No. 245 MDA 2025 |
| E. KING | : | |

Appeal from the Order Entered January 24, 2025
In the Court of Common Pleas of York County Civil Division at No(s):
2024-FC-000663-03

BEFORE:   LAZARUS, P.J., BOWES, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BOWES, J.:                    **FILED: AUGUST 13, 2025**

Tammysue Hersey ("Maternal Grandmother") appeals from the order denying her custody complaint, which she had filed against her daughter, Harlie Shae Wetzel ("Mother"), concerning her grandchild, E.J.K., born in 2018. We affirm.

We glean the following history from the certified record. Mother has always had primary custody of E.J.K. Brooks E. King ("Father") has not been involved in E.J.K.'s life in any manner since she was approximately eight months. From 2021 to 2023, Maternal Grandmother babysat for E.J.K. approximately one to two weekends per month while Mother worked and attended school. During those weekends, E.J.K. would attend church, engage in various activities and trips, and sleep at Maternal Grandmother's home,

_____

[*] Former Justice specially assigned to the Superior Court.

which she shared with her husband, William English. On October 1, 2023, Mother ceased contact with Maternal Grandmother.

On March 27, 2024, Maternal Grandmother filed the underlying complaint for partial physical custody of E.J.K. She averred standing by claiming that she previously exercised partial custody during the weekend overnights. After Mother submitted preliminary objections for lack of standing, Father filed a custody complaint seeking shared legal custody of E.J.K. and for Maternal Grandmother to have visitation rights. In light of Father's filing, the parties agreed to the withdrawal of Mother's preliminary objections challenging Maternal Grandmother's standing. Notably, Father never appeared nor participated in these proceedings. By interim order, Maternal Grandmother resumed caring for E.J.K. one weekend per month from June 2024 until the custody trial that November.

At trial, the court heard testimony from Maternal Grandmother, Tesla Wetzel ("Maternal Aunt"), Mother, and Mother's sister-in-law, Sarah Hersey. Additionally, the parties stipulated to proffered testimony by several other individuals, and the court conducted an *in camera* interview with E.J.K. The evidence demonstrated that E.J.K. enjoyed her weekends with Maternal Grandmother, which included horseback riding lessons and trips to places like the Baltimore Aquarium and Hersheypark. However, Mother cited several concerns with: (1) Maternal Grandmother's home in that E.J.K. slept on a cot in the living room because the other bedrooms were too full of clutter to be used; (2) Maternal Grandmother's lackadaisical adherence to Mother's request

that E.J.K. not eat gluten; (3) E.J.K. experiencing vaginal problems following visits with Maternal Grandmother and Mr. English, which resolved when Mother ended the visits; (4) Maternal Grandmother allowing Maternal Aunt, who had a suspended license after multiple convictions for driving under the influence ("DUI"), to drive her and E.J.K. to Baltimore without notifying Mother and despite Mother not wanting E.J.K. to be around Maternal Aunt given her past drug and alcohol abuse; (5) Maternal Grandmother failing to abide by Mother's requests regarding E.J.K.'s bedtime; and (6) Maternal Grandmother not adequately tending to E.J.K.'s injuries or timely reporting them to Mother. Ms. Hersey echoed some of these concerns and explained that she had a custody agreement with her estranged husband, Maternal Grandmother's son, prohibiting Maternal Grandmother from being alone with their children unsupervised. *See* N.T. Trial, 11/18/24, at 256-57.

The court denied Father's custody request due to his "repeated absence from and blatant refusal to actively participate in these proceedings[.]" Order, 11/20/24. As to Maternal Grandmother, the court observed: "Mother's decision here is what she firmly believes is in the best interest of [E.J.K.] and for her daughter's safety and [the court] cannot, with clear conviction and without hesitation, find that Maternal Grandmother's presentation has met the weight and burden required to super[s]ede Mother's opposition to award custody." N.T. Trial, 11/18/24, at 291 (some capitalization altered).

In rendering its decision, the court relied upon 23 Pa.C.S. § 5327(b), which governs the presumption applied to requests for primary physical

custody. Thus, Maternal Grandmother filed a Pa.R.C.P. 1930.2(b) motion for reconsideration because the court incorrectly utilized the standard applicable to primary, not partial, custody. The court agreed that it so erred, granted reconsideration, and held oral argument. Upon applying the proper standard under § 5328(c) (regarding custody factors and partial or supervised physical custody for grandparents), the court issued a reconsidered decision, which again denied Maternal Grandmother's demand for custody. This time, however, it did so premised upon findings that awarding Maternal Grandmother partial physical custody would interfere with Mother's parent/child relationship with E.J.K. and would not be in E.J.K.'s best interests. *See* N.T. Hearing, 1/22/25, at 23.

This timely appeal followed. Maternal Grandmother and the court complied with the requirements of Pa.R.A.P. 1925. In her brief, Maternal Grandmother presents three issues for our consideration:

I.    Whether the trial court erred as a matter of law and abused its discretion in dismissing Maternal Grandmother's petition for custody pursuant to which she sought rights of partial physical custody of the subject child pursuant to 23 Pa.C.S. § 5328.

II.   Whether the trial court erred as a matter of law and abused its discretion in determining th[at] Maternal Grandmother did not meet her burden of proof in establishing that it was in the subject child's best interest to continue the child's longstanding relationship with Maternal Grandmother.

III.  Whether the trial court erred as a matter of law and abused its discretion by determining it was not in the subject child's best interest to maintain the long-standing relationship between the subject child and Maternal Grandmother.

Maternal Grandmother's brief at 5-6 (citation and some capitalization altered).

Since Maternal Grandmother's complaints are intertwined, we address them together. The following provisions dictate the parameters of our analysis:

> We review the trial court's custody order for an abuse of discretion. We defer to the trial court's factual findings that are supported by the record and its credibility determinations. However, we are not bound by the trial court's deductions or inferences, nor are we constrained to adopt a finding that cannot be sustained with competent evidence. In sum, this Court will accept the trial court's conclusion unless it is tantamount to legal error or unreasonable in light of the factual findings.
>
> The primary concern in any custody case is the best interests of the child. The best-interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well-being.

*M.G. v. L.D.*, 155 A.3d 1083, 1091 (Pa.Super. 2017) (cleaned up).

Maternal Grandmother argues that the trial court's characterization of her prior relationship to E.J.K. as one of simply a caretaker is belied by the record. *See* Maternal Grandmother's brief at 24-25. She maintains that the court "fail[ed] to properly consider the vibrant, extensive, and positive relationship" between Maternal Grandmother and E.J.K. *Id*. at 25. Moreover, she insists that the court's concerns for E.J.K.'s safety and finding of interference with the parent/child relationship "are either not supported by the record, or have been blown out of proportion, or alternatively can be remedied with a detailed order of court without suffering the termination of the grandmother/granddaughter relationship." *Id*. at 32.

By Maternal Grandmother's account, the court relied upon isolated incidents that "have been elevated beyond their importance" and "never placed the child in harm's way." *Id*. at 32-35, 41. For example, she contends that the court's conclusion that allowing Maternal Aunt to drive E.J.K. placed her in danger "amounts to supposition and conjecture[.]" *Id*. at 33. She insists that the safety issues, which receive weighted consideration pursuant to the Custody Act, "are a strawman argument utilized to justify the trial court's decision, and do not withstand scrutiny upon careful examination." *Id*. at 38. At bottom, Maternal Grandmother asks us to reverse because the court could have addressed all concerns by imposing an order with appropriate restrictions and guidance. *Id*. at 34-35, 38-39, 44.

Here, the trial court found Maternal Grandmother had standing pursuant to 23 Pa.C.S. § 5325(2), resulting from Father's custody complaint filed after Maternal Grandmother's commencement of this action.[1] Thus, the following considerations applied to the court's custody determination in this matter:

_____

[1] This subsection confers standing in the following scenarios:

> (2) [W]here the relationship with the child began either with the consent of a parent of the child or under a court order and where the parents of the child:
>
> > (i) have commenced a proceeding for custody; and
> >
> > (ii) do not agree as to whether the grandparents or great-grandparents should have custody under this section[.]

*(Footnote Continued Next Page)*

(c) **Grandparents and great-grandparents**.--

(1) In ordering partial physical custody or supervised physical custody to a party who has standing under [§] 5325(1) or (2) (relating to standing for partial physical custody and supervised physical custody), the court shall consider the following:

(i) the amount of personal contact between the child and the party prior to the filing of the action;

(ii) whether the award interferes with any parent-child relationship; and

(iii) whether the award is in the best interest of the child.

23 Pa.C.S. § 5328. In considering the child's best interests, "the trial court is required to engage in a review of the . . . statutory best-interest factors applicable when making any order of custody." *M.G.*, 155 A.3d at 1100 (cleaned up). The statutory custody factors provide:

_____

23 Pa.C.S. § 5325. The trial court expressed its hesitance in finding that Maternal Grandmother had standing considering Father's apparent gaming of the system:

I do not believe that was the intent of the legislature, that a parent could just unilaterally come in, file a custody complaint, not pursue it, not participate in the grandparent's custody case, and yet all of a sudden that gives grandparents standing. I don't believe that was legislative intent. I would be happy to see that issue taken up for clarification by the appellate courts.

N.T. Hearing, 1/22/25, at 19 (some capitalization altered); *see also* Mother's brief at 23-28 (claiming that the trial court erred in failing to dismiss Maternal Grandmother's complaint for lack of standing). While we appreciate the court's request for clarification and concern about Father's motivations, this issue was not raised by Maternal Grandmother and we cannot address it *sua sponte*.

**(a) Factors.--**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving substantial weighted consideration to the factors specified under [¶¶] (1), (2), (2.1) and (2.2) which affect the safety of the child,[2] including the following:

> (1) Which party is more likely to ensure the safety of the child.
>
> (2) The present and past abuse committed by a party or member of the party's household, which may include past or current protection from abuse or sexual violence protection orders where there has been a finding of abuse.
>
> (2.1) The information set forth in [§] 5329.1(a) (relating to consideration of child abuse and involvement with protective services).
>
> (2.2) Violent or assaultive behavior committed by a party.
>
> (2.3) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party if contact is consistent with the safety needs of the child.
>
> (3) The parental duties performed by each party on behalf of the child.

---

[2] As explained by our Supreme Court, § 5328(a) was amended in 2024, pursuant to an act known as Kayden's Law, in pertinent part as follows:

> Kayden's Law [expanded] the factors to be considered in the custody court's best interest analysis and now requires the court to give "substantial weighted consideration" to, *inter alia*, the "safety of the child," which is defined in Kayden's Law as including "the physical, emotional and psychological well-being of the child," and any "[v]iolent or assaultive behavior committed by a party." Act of April 15, 2024, P.L. 24, No. 8, §§ 2-3 (as amended 23 Pa.C.S. §§ 5322(a), 5328(a)).

***Velasquez v. Miranda***, 321 A.3d 876, 886 n.6 (Pa. 2024).

(4) The need for stability and continuity in the child's education, family life and community life, except if changes are necessary to protect the safety of the child or a party.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's developmental stage, maturity and judgment.

(8) The attempts of a party to turn the child against the other party, except in cases of abuse where reasonable safety measures are necessary to protect the safety of the child. A party's reasonable concerns for the safety of the child and the party's reasonable efforts to protect the child shall not be considered attempts to turn the child against the other party. A child's deficient or negative relationship with a party shall not be presumed to be caused by the other party.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child or self from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

>  (15) The mental and physical condition of a party or member of a party's household.
>
>  (16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

For example, in **M.G.**, a grandfather requested partial physical custody of his granddaughter due in part to concerns about her being subjected to abuse by her adopted brother during her mother's custodial time. The trial court denied his request because it deemed his concerns pretextual and found that awarding custody would interfere with the parent-child relationship and not be in the grandchild's best interests. Determining the court's factual findings to be unsupported by the record, we reversed. In addition, while not preserved as an issue, we noted that the court erroneously denied custody without engaging in the necessary custody-factor analysis and without considering the level of contact between the child and grandfather, which is a necessary component of § 5328(c)(1).

Maternal Grandmother equates the underlying matter to that within **M.G.**, and asks us to reverse on that basis. However, we find that case readily distinguishable. Unlike the court in **M.G.**, the trial court here, after granting reargument, applied the proper analysis and considered all the necessary custody factors at § 5328(a), as well as the grandparent-specific elements at § 5328(c). In doing so, it explicitly rejected Maternal Grandmother's argument that the isolated incidents of potential danger and non-adherence to Mother's rules were overblown:

> I know I keep harping on that [road trip with Maternal Aunt], but that is just such an abject lack of judgment that I cannot even contemplate why it's just glossed over that it's not that big of a deal. It is a huge deal. In fact, DUI is one of the new offenses under Kayden's Law that is considered when looking at custody. This person is driving on a DUI suspended license for, I believe there was testimony up to four DUIs, and yet it's just not even a thought that this person was then transporting this young child to the inner city of Baltimore. So I do find that the award would interfere with the parent/child relationship.

N.T. Hearing, 1/22/25, at 21. Indeed, the court gave the safety concerns weighted consideration pursuant to § 5328(a)(1), and found that they militated against granting partial physical custody to Maternal Grandmother:

> The court heard significant and substantial concerns for the child's safety while in the custody of Maternal Grandmother regarding adhering to sleep and eating protocols; allowing the child to be around individuals with a history of drug and alcohol addiction, who have criminal records, who drive on DUI suspended licenses, who were knowingly permitted to transport the child; unexplained vaginal irritation discharge; significant bruising and cuts not brought to Mother's attention until child was returned to her; and credible testimony that the vaginal issues resolved at the time that she stopped allowing Maternal Grandmother to care for the child.

*Id*. at 22-23 (some capitalization altered).

The court's factual findings are amply supported by the certified record. Upon review, we discern no abuse of discretion in how the court analyzed those factors and determined that Maternal Grandmother's request for partial physical custody was not in E.J.K.'s best interests. Thus, we affirm the order denying Maternal Grandmother's request for partial physical custody.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 08/13/2025